16715

STATE v. MILLER

(74 S. E. (2d) 582)

*Mr. R. B. Hildebrand,* of York, *for Appellant,* 

*Mr. Robert W. Hemphill, Solicitor,* of Chester, *for Respondent,* 

February 9, 1953.

STUKES, Justice.

The appellant and nine others were indicted for alleged criminal conspiracy, upon the first count to injure the person and property of ones Branham, Gregory and Munn by exploding dynamite under the automobile of Branham, under the homes and property of Gregory and Munn; and, under the second count of the indictment, about the property of one Melton. The defendants and the victims of the conspiracy were employees of a textile plant at Rock Hill and all were members of a trade union which had gone on strike several months before; the victims, however, had recently returned to work upon the re-opening of the plant, and were strike-breakers; the defendants continued on strike and, in co-operation with other strikers, maintained a picket

line at the gate of the plant, by which and other means they harrassed the workers who had returned to their jobs.

Eight of the ten defendants pleaded guilty, and the defendant Miller, who is now appellant, and defendant West went to trial together upon their pleas of not guilty. Two of the defendants who pleaded guilty testified for the State and of them one Jack Baker was a principal witness for the prosecution, although apparently somewhat unwilling. He testified concerning appellant that the latter took him in his automobile on Thursday or Friday before the explosions on the following Monday night at about one A. M., to a bridge on a nearby highway where a sack containing the dynamite (and unattached caps and fuse) was obtained by appellant from a hiding place under the bridge, and they took it to Baker's river resort to which they returned Monday afternoon and appellant then inserted the caps and fuses in the sticks of dynamite, using for that purpose his knife and pencil. The dynamite, thus finally prepared for use, was divided into four parcels, two sticks to each parcel, and brought back to Rock Hill and hidden again near the bridge, except one parcel which appellant kept in his automobile, and that was the last the witness saw of this fourth parcel which was retained by appellant. A reasonable inference from all of the evidence is that it was used in one of the explosions. Direct evidence by this witness of the planning and conspiring by appellant is here reproduced from the record:

"Q. And you and Miller fixed the dynamite by putting the caps in them and fused the dynamite? A. He fixed them.

"Q. Did you have any discussion as to what the dynamite was to be used for at that time? A. Yes.

"Q. What agreement, if any, and what was said between you and Miller? A. Well, we talked about trying to scare the ones going in the mill. We just wanted to scare them out. We didn't want to hurt nobody.

"Q. But you were going to use the dynamite to scare them? A. That is right.

"Q. What did you say? Just give us the conversation between you and Miller. A. I don't remember what all was said.

"Q. I mean with reference to what you were going to use the dynamite for? A. What I was going to use it for?

"Q. Yes, between you and Miller? A. He asked me did I know anybody I could get to help use it.

"Q. Wait a minute. I am talking about what use the dynamite was made for. What use were you going to put the dynamite to? A. To dynamite like we did."

The three victims of the explosions testified, none of whom suffered personal injuries; but the automobile of one was destroyed and the home of one and the barn of another were extensively damaged. The homes of two of them were in the mill village but the third was about three miles distant.

Officers were on watch at the mill at the time of the explosions which they undertook to investigate and discovered appellant as he arrived at his home shortly afterward. They placed him under arrest after which they took from his person pliers, knife, pen and pencil which were later sent by them to the Federal Bureau of Investigation in Washington for examination.

The defendant West testified that after he and his companions started with some of the dynamite to explode under the automobile or about the premises of intended victim Munn, he decided to abandon the mission and persuaded his companions also to desist from it. Afterward that parcel of dynamite was buried and subsequently officers were carried to the hiding place where it was recovered by them and a stick of it was also sent to the F. B. I. Further recovery by the officers consisted of four additional sticks of dynamite and eight caps which were found at Baker's river resort to which he directed them. Sweepings from the barbecue stand, where Baker testified the dynamite was capped and fused, were also sent to the F. B. I. for examination.

A Special Agent of the Bureau, a trained chemical engineer and long employed by it, testified for the State that

he examined the dynamite, sweepings and other articles. The hole in the stick of dynamite for the insertion of the cap was made by the round end of the pencil, the stationary end of the pen, or an instrument of the same size and shape; and on a blade and on the screwdriver of the knife he found fragments of orange-colored wax similar to that in the wrapper of the fuse, which indicated that the knife blade and screwdriver (it was a Boy Scout knife) had been used to cut and insert this particular fuse in the dynamite. The wax fragments were mounted on slides by the witness, identified and placed in evidence. Separate lengths of fuse (which had been obtained from the river resort and dug up near the mill) were found to be so alike, including an unusual defect in manufacture, as to show that they came from the same coil of fuse. The witness was even able to determine the manufacturer, whom he named. In the sweepings were found small fragments of sulphur and bits of red and white fibres which were identical with that used in the manufacture of the fuse. All of this expert testimony was convincing corroboration that appellant prepared the dynamite for use with his knife and knife-screwdriver, as Baker testified.

At the conclusion of the evidence in chief for the State counsel who represented West and appellant moved for the acquittal of West, adding, quoting from the record, page 121, "We have no motion as to Miller." The motion, which was thus expressly limited to West's behalf, was refused. Again at the close of all of the evidence the motion for directed verdict of acquittal was renewed in behalf of West alone, record, pp. 165, 166, whereupon verdict was directed in favor of West on the second count of the indictment. There appears to have been no similar motion in behalf of appellant. However, after verdict of acquittal of West and conviction of appellant on the first count only, the latter moved for new trial which was refused. There were two grounds, which appellant contends give rise to two questions on appeal. The first is, as stated in appellant's brief:

"Did the trial judge commit error in refusing defendant's motion for a new trial on the ground that there was a total failure of proof to connect the defendant with the conspiracy, and did the court err in refusing defendant's motion for a new trial on the ground that the verdict was contrary to the weight of the evidence?"

Enough of the testimony has been stated to show that this ground would have been without merit, if it had been seasonably made. The failure of the able and experienced trial counsel to timely move for direction of verdict for acquittal of appellant is very clearly indicative of his view at the trial. Absence of timely motion renders the point unavailable on appeal under rule 76 of the Circuit Court. However, this court has frequently disregarded the rule in appeals from criminal convictions. *State v. Thompkins,* 220 S. C. 523, 68 S. E. (2d) 465. But not always so. *State v. Criddle,* 125 S. C. 264, 118 S. E. 424. For other examples, both ways, see 7 West's South Carolina Digest, Criminal Law, § 1044, page 666 *et seq.*

There can be no doubt of the sufficiency of the evidence against appellant. He was caught by the officers practically at the scene of the criminal acts which were the culmination of the conspiracy and with the tool-evidence in his possession. The testimony of his co-conspirators, turned State's evidence, filled out the case made by the damning circumstances of the left-over dynamite which fell into the hands of the officers and the matching particles found on appellant's knife blade and screwdriver attachment by the F. B. I. expert. Often proof of conspiracy is necessarily by circumstantial evidence alone. 15 C. J. S., Conspiracy, § 92a, page 1141; *State v. Hightower,* 221 S. C. 91, 69 S. E. (2d) 363. Here proof was relatively easy by aid of confessions in evidence by some of the conspirators.

It is well-settled that the refusal by a trial judge of a motion for new trial on the facts will not be disturbed on appeal if there was any evidence reasonably

supporting the verdict of the jury. In this respect the case falls within the rule stated in *State v. Hurt,* 212 S. C. 461, 48 S. E. (2d) 313, 321, as follows: "The learned trial Judge, who saw the witnesses, heard their testimony, and was in a better position to appraise the evidence falling from their lips, has in his discretion, refused to exercise the power vested solely in him of granting a new trial on the facts. On appeal from the refusal of a Circuit Judge to grant a new trial on questions of fact, no relief can be afforded here. [Citing cases.] Of course, if there was no testimony to support the verdict, this Court would not be powerless." See also the later decision of *State v. Harvey,* 220 S. C. 506, 68 S. E. (2d) 409.

The only other question on appeal arises out of the denial of a subsequent motion by appellant for new trial upon the ground of after-discovered evidence. The latter was claimed to be contained in the affidavit of one Duncan that he was at the home of appellant on the afternoon of the explosions that night when Baker, whose State's evidence has been referred to, borrowed from appellant a screwdriver and pocket knife which Baker took away; and the affidavit of another that he was in a pool room on the same night and saw Baker deliver to appellant a pair of pliers, a pocket knife and a screwdriver. Interesting variance in the description of the articles is noted in the affidavits, and between both of them and the description in the evidence of the F. B. I. agent. There are other inconsistences between the contents of the affidavits and the testimony adduced on trial, which need not be pursued. The trial judge denied the motion with the following sound comment: "From the affidavits submitted and after reviewing the testimony, I am fully convinced that there is no probability that such evidence would change the result if a new trial were to be granted. It further appears from the record that Miller knew of Trader, as he testified about Trader in his testimony and I find further in the record that James Claude Duncan, who made one of the affidavits, is the son of A. D.

Duncan, who testified, so that it appears that the evidence, could have been discovered before the trial by the exercise of due diligence, since one of the witnesses was named in the trial, and another of the witness' father testified at the trial. I further find that the evidence is cumulative and its only tendency would be an attempt to impeach other testimony, which Miller himself attempted to do on the witness stand. The motion for a new trial on this ground should be refused."

The motion called into play the discretion of the trial judge and his decision will not be reversed in the absence of a showing of abuse in its exercise— clearly absent here. Applicable is the following quotation from *State v. Bradford*, 87 S. C. 546, 70 S. E. 308, which was cited and applied in *State v. Jackson*, 122 S. C. 493, 115 S. E. 750, 752: "It cannot be said, therefore, that the affidavits must necessarily lead any reasonable mind to the inference that the newly discovered evidence would probably change the result. Nothing short of this would justify the conclusion that the circuit court abused its discretion in refusing the motion."

A valuable recent authority on motions for new trial on after-discovered evidence is the order on circuit of the late lamented Judge L. D. Lide (who also frequently graced this court as an acting justice) which was published in the report of *State v. Strickland*, 201 S. C. 170, 22 S. E. (2d) 417.

Affirmed.

BAKER, C. J., and FISHBURNE, TAYLOR and OXNER, JJ., concur.