478 S.E.2d 289

The STATE, Respondent,

v.

Mayberry HORNE, Appellant.

No. 2562.

Court of Appeals of South Carolina.

Heard Sept. 10, 1996.

Decided Oct. 7, 1996.

Rehearing Denied Nov. 21, 1996.

Assistant Appellate Defender Lesley M. Coggiola, of S.C. Office of Appellate Defense, Columbia, for Appellant.

Attorney General Charles Molony Condon, Chief, State Grand Jury, John S. Simmons, Assistant Attorney General,

State Grand Jury, Chris Gantt Hoffman, Columbia, for Respondent.

ANDERSON, Judge:

Mayberry Horne appeals the trial judge's denial of his motion for a directed verdict on the charge of conspiracy to traffic in 100 pounds or more of marijuana. We affirm.

### FACTS/PROCEDURAL BACKGROUND

Appellant was one of seventeen persons indicted by the State Grand Jury for conspiracy to traffic in 100 pounds or more of marijuana, a violation of S.C.Code Ann. § 44-53-370(e)(1)(b) (Supp.1995). Specifically, the indictment charged Robert "Bob" E. Gearhart, Bobby James Dove, David Gibson, Donald Edwin James, Edward Michael Shannon, Marisol "Mary" Uribe, Gerald Vincent Williams, Randy Willard McWaters, Steve Garris, Claude Lee Blevins, Thomas "Tom" E. Grant, Kenneth Tesseneer a/k/a "K.T.," David Jack Wallace a/k/a "Karate Dave," John Clay Watts, Samantha Lynn Edwards, Deborah Wishert and Mayberry Horne (Appellant) with knowingly conspiring, agreeing, and having a tacit understanding to traffic in 100 pounds or more of marijuana in Union, Chester, York, and Greenville counties from approximately January 1, 1993 until December 31, 1993. Ten of the defendants pled guilty to charges related to the conspiracy. Appellant and six co-defendants—Gearhart, Dove, Shannon, Uribe, Williams, and McWaters—proceeded to a joint trial at which all except McWaters were convicted of conspiracy to traffic in 100 pounds or more of marijuana; McWaters was convicted of conspiracy to traffic in between 10 and 100 pounds of marijuana.

Numerous State's witnesses were presented at the trial of Appellant and his six co-defendants. Claude Lee Blevins, who pled guilty to conspiracy to distribute marijuana, testified as a confidential informant regarding the activities of several of the defendants who allegedly worked with Appellant. David Gibson, Deborah Wishert, and Donald James testified with specificity as to Appellant's role in this complex trafficking operation. Prior to Appellant's trial, Gibson and James pled guilty to conspiracy to traffic in between 10 and 100 pounds of

marijuana, and Wishert pled guilty to conspiracy to distribute marijuana.

Blevins testified that after his arrest in 1993 for possession of marijuana, he became a confidential informant for law enforcement and began providing information about his roommate, defendant Bobby James "Jamie" Dove. Blevins admitted he had sold marijuana for Jamie Dove and defendant Michael Shannon. He stated he first became aware Dove was trafficking in large quantities of marijuana when he found four or five empty boxes in one of the bedrooms at Dove's home and a large amount of marijuana residue on the floor. Dove informed Blevins that he and several other individuals had cut up 200 pounds of marijuana that day, taken it to defendant Donald James's trailer, and buried it in a steel box in the back yard.

Blevins testified that on another occasion, he drove Jamie Dove to the Charlotte, North Carolina airport in an unsuccessful attempt to pick up a shipment of marijuana. The day after the Charlotte trip, Blevins saw two suitcases which had a strong odor of marijuana at Dove's home, and Gearhart told him that he had picked up the shipment himself early that morning. Blevins stated that, at Gearhart's instruction, Dove gave him 2 ounces of the marijuana "for his trouble." Blevins also revealed that he arranged the sale of 10 pounds of marijuana to an undercover officer, Matt Hall, by Bob Gearhart, Jamie Dove, and Michael Shannon. Blevins stated Marisol Uribe lived with Bob Gearhart and was also present during some of the discussions about the trafficking scheme, but stated he did not know Appellant.

Defendant David Gibson testified that he contacted the police and admitted his involvement in the trafficking conspiracy after becoming aware that several of the defendants were under investigation. Gibson stated he was living with Deborah Wishert, who is now his wife, and Donald James in January 1993 when Bob Gearhart asked him to pick up a 25-pound package of marijuana in Texas and bring it back to Chester, South Carolina. Gibson stated he had previously purchased drugs from Gearhart in 1986. Gibson drove to Texas with Wishert and Michael Shannon to complete the transaction, but only 5 pounds of marijuana was available at

that time. At Gearhart's request, Gibson subsequently made four more out-of-state trips in 1993 to New York and Los Angeles and brought back approximately 175 pounds of marijuana: Gibson obtained 25 pounds in New York and 50 pounds on each of three trips to Los Angeles.

Gibson stated that he usually followed the same procedure on each trip; Bob Gearhart or Marisol Uribe would reserve his plane tickets and motel room and give him the phone number of their contact person, someone would deliver the drugs to his motel room, and Gibson would telephone Wishert to confirm things were going according to schedule. Upon Gibson's return to South Carolina, he would take the marijuana to Donald James's home, where those present would smoke a sample before burying the rest in some nearby woods. Gibson testified that Appellant was one of several defendants who regularly received about 5 pounds of marijuana out of each shipment Gibson brought back to South Carolina. Gibson also admitted he made three trips to the airport to pick up shipments of marijuana coming in from other states, and noted Appellant was present on one of the occasions when he returned to Donald James's home with the marijuana.

Deborah Wishert, who is now married to David Gibson, testified that she usually drove Gibson to and from the Charlotte airport for his out-of-state trips to purchase marijuana, but on one of Gibson's return trips from Los Angeles, Donald James asked Appellant to pick up Gibson because Wishert was having car trouble. Wishert testified that she was in fact able to pick up Gibson, but no one informed Appellant of the change in plans. When Wishert and Gibson subsequently arrived at Donald James's home with the shipment of marijuana, Wishert stated Appellant and his wife were already there, and they were joking about Appellant's inability to find Gibson at the Charlotte airport.

Donald James testified that he contacted the police and informed them of his role in the marijuana operation because he knew he was being investigated. James stated Bob Gearhart approached him in 1993 and asked him if he was interested in returning to the marijuana business. Gearhart initially gave James 10 pounds of marijuana, which he distributed to Appellant, David Gibson, Steve Garris, and Jamie Dove.

James stated that on another occasion, Appellant received a portion of a 25– to 30–pound shipment of marijuana that had been brought back from Ohio. James testified that the marijuana Gibson, Wishert, and Shannon brought back from Texas was a shipment weighing approximately 8 pounds; he recalled it was buried in the ground and then later given to Appellant.

James testified he assisted Gearhart and Uribe in making arrangements for Gibson to start flying the marijuana in, usually 50 pounds at a time. James recalled Gibson went to "either New York or Chicago," and then made three trips to California to purchase marijuana. James stated that at Gearhart's instruction, he, Appellant, Gibson, and Michael Shannon divided the 50–pound shipments of marijuana into 1–gallon baggies and put it in plastic containers which they buried in the woods. James testified that Appellant usually received anywhere from "2 to 3 to 5 pounds" of marijuana out of each shipment for his assistance. James estimated 150 to 170 pounds of marijuana were brought in from January to March of 1993.

At the conclusion of the State's evidence, Appellant moved for a directed verdict on the charge of conspiracy. The trial judge denied the motion, and the jury subsequently convicted Appellant of conspiracy to traffic in 100 pounds or more of marijuana.

## ISSUE

Did the trial judge err in denying Appellant's motion for a directed verdict?

## LAW/ANALYSIS

Appellant contends the only evidence presented at trial was that he might have obtained drugs in amounts of 2 to 3 pounds from individuals who were involved in an operation which was bringing drugs into South Carolina. Appellant argues there was no evidence linking him to an organized trafficking operation, and he was therefore entitled to a directed verdict on the charge of conspiracy to traffic in 100 pounds or more of marijuana. We disagree.

*MOTION FOR A DIRECTED VERDICT*

## A. STANDARD OF REVIEW

■ In reviewing the trial judge's denial of a motion for a directed verdict, we must view the evidence in the light most favorable to the State, and if there is any direct or any substantial circumstantial evidence, reasonably tending to prove the guilt of the accused, we must find that such issues were properly to be decided by the jury. *State v. Venters,* 300 S.C. 260, 387 S.E.2d 270 (1990). *See also State v. Prince,* 316 S.C. 57, 64, 447 S.E.2d 177, 181–82 (1993) ("It is well-established that, in ruling on a motion for directed verdict, the trial court must view the evidence in the light most favorable to the State. The case should be submitted to the jury if there is any substantial evidence which reasonably tends to prove the guilt of the accused or from which guilt may be fairly and logically deduced.").

■ In ruling on a motion for a directed verdict, the trial judge is concerned with the existence or nonexistence of evidence, not its weight. *State v. Williams,* 303 S.C. 274, 400 S.E.2d 131 (1991); *State v. Morgan,* 282 S.C. 409, 319 S.E.2d 335 (1984). However, "[t]he trial judge should grant a directed verdict motion when the evidence merely raises a suspicion that the accused is guilty." *State v. Schrock,* 283 S.C. 129, 132, 322 S.E.2d 450, 452 (1984).

■ We note that the trial judge's standard for submission of the case to the jury is distinguishable from the standard applied by the jury in evaluating circumstantial evidence. Where the evidence is circumstantial, it is the trial court's duty to submit the case to the jury if there is any substantial evidence which reasonably tends to prove the guilt of the accused, or from which his guilt may be fairly and logically deduced. *State v. Brisbon,* 474 S.E.2d 433 (S.C.Sup. Ct.1996) (Davis Adv.Sh. No. 23 at 9); *State v. Stokes,* 299 S.C. 483, 386 S.E.2d 241 (1989); *State v. Littlejohn,* 228 S.C. 324, 89 S.E.2d 924 (1955). In contrast, the standard for the jury's deliberation is that it may not convict the defendant unless every circumstance relied upon by the State has been proven beyond a reasonable doubt, and all of the circumstances so proven are consistent with each other and, taken together, point conclusively to the guilt of the accused to the exclusion

of every other reasonable hypothesis. *State v. Edwards,* 298 S.C. 272, 379 S.E.2d 888, *cert. denied,* 493 U.S. 895, 110 S.Ct. 246, 107 L.Ed.2d 196 (1989); *State v. Wakefield,* 473 S.E.2d 831 (S.C.Ct.App.1996) (Davis Adv.Sh. No. 16 at 14).

## B. CONSPIRACY

A "conspiracy" is statutorily defined as a combination between two or more persons for the purpose of accomplishing an unlawful object or a lawful object by unlawful means. S.C.Code Ann. § 16–17–410 (Supp.1995). In *State v. Fleming,* 243 S.C. 265, 133 S.E.2d 800 (1963), the South Carolina Supreme Court states the law of conspiracy with exactitude:

> The foregoing statute [the predecessor to section 16–17–410] is declaratory of the common law definition of conspiracy. *State v. Jacobs,* 238 S.C. 234, 119 S.E.2d 735, and authorities cited therein. It need not be shown that either the object or the means agreed upon is an indictable offense in order to establish a criminal conspiracy. It is sufficient if the one or the other is unlawful. *State v. Davis,* 88 S.C. 229, 70 S.E. 811. Nor need a formal or express agreement be established. A tacit, mutual understanding, resulting in the willful and intentional adoption of a common design by two or more persons is sufficient, provided the common purpose is to do an unlawful act either as a means or an end. 15 C.J.S. *Conspiracy* § 40. Although the offense of conspiracy may be complete without proof of overt acts, such "acts may nevertheless be shown, since from them an inference may be drawn as to the existence and object of the conspiracy. It sometimes happens that the conspiracy can be proved in no other way." *State v. Hightower,* 221 S.C. 91, 69 S.E.2d 363. "To establish sufficiently the existence of the conspiracy, proof of an express agreement is not necessary, and direct evidence is not essential, but the conspiracy may be sufficiently shown by circumstantial evidence and the conduct of the parties. The circumstantial evidence and the conduct of the parties may consist of concert of action." 15 C.J.S. *Conspiracy* § 93a.

*Id.* at 274, 133 S.E.2d at 805.

An excellent academic review of the law of conspiracy is articulated in *State v. Amerson,* 311 S.C. 316, 428 S.E.2d 871 (1993):

Generally, the agreement, which is the essence of the conspiracy, is proven by various overt acts committed in furtherance of the conspiracy. Therefore, a single conspiracy may be established by completely different aggregations of proof so that there appears to be several conspiracies. *United States v. Ragins,* 840 F.2d 1184 (4th Cir.1988). Accordingly, a multi-pronged flexible "totality of the circumstances" test is applied to determine whether there were two conspiracies or merely one. *Id.* The factors considered are (1) the time periods covered by the alleged conspiracies; (2) the places where the conspiracies are alleged to have occurred; (3) the persons charged as conspirators; (4) the overt acts alleged to have been committed in furtherance of the conspiracies, or any other descriptions of the offenses charged which indicate the nature and scope of the activities being prosecuted; and (5) the substantive statutes alleged to have been violated. *Id.* This test was adopted by this Court in [*State v. Dasher,* 278 S.C. 454, 298 S.E.2d 215 (1982) ].

*Id.* at 319–20, 428 S.E.2d at 873.

 It is axiomatic that a conspiracy may be proved by direct or circumstantial evidence or by circumstantial evidence alone. *State v. Childs,* 299 S.C. 471, 385 S.E.2d 839 (1989). As *State v. Miller,* 223 S.C. 128, 74 S.E.2d 582 (1953) instructs: "Often proof of conspiracy is necessarily by circumstantial evidence alone." *Id.* at 133, 74 S.E.2d at 585 (citing 15 C.J.S. *Conspiracy* § 92a, page 1141). Substantive crimes committed in furtherance of the conspiracy constitute circumstantial evidence of the existence of the conspiracy, its object, and scope. *State v. Wilson,* 315 S.C. 289, 433 S.E.2d 864 (1993). Under South Carolina law, no overt acts need be shown to establish a conspiracy. The crime consists of the agreement or mutual understanding. *Id.*

 It is not enough for the offense of conspiracy that a group of people separately intend to distribute drugs in a single area, nor enough that their activities occasionally or sporadically place them in contact with each other. *State v. Gunn,* 313 S.C. 124, 437 S.E.2d 75 (1993). Proof of a buyer-seller relationship, without more, is inadequate to tie the buyer to a larger conspiracy; however, an agreement to

distribute drugs can rationally be inferred from frequent contacts among the defendants and from their joint appearances at transactions and negotiations. *Id.*

Once a conspiracy has been established, evidence establishing beyond a reasonable doubt the connection of a defendant to the conspiracy, even though the connection is slight, is sufficient to convict him with knowing participation in the conspiracy. *State v. Sullivan,* 277 S.C. 35, 282 S.E.2d 838 (1981). Further, "the acts and declarations of any conspirator made during the conspiracy and in furtherance thereof are deemed to be the acts and declarations of every other conspirator and are admissible against all." *Id.* at 42, 282 S.E.2d at 842.

Viewed in the light most favorable to the State, there was sufficient evidence in the case *sub judice* tending to prove Appellant was guilty of conspiring to traffic in 100 pounds or more of marijuana. Contrary to Appellant's assertion, his role was not limited to that of a buyer-seller relationship with his co-defendants. Rather, there was testimony offered by an admitted co-conspirator, Donald James, that Appellant regularly received a portion of the marijuana shipments that were brought into South Carolina by Gibson, and that he helped divide and package the drugs into amounts suitable for distribution. Further, there was evidence that Appellant attempted to pick up David Gibson, another admitted co-conspirator, when he returned to Charlotte from Los Angeles with approximately 50 pounds of marijuana. Although overt acts are not required to establish the crime of conspiracy, *State v. Wilson, supra,* the testimony concerning Appellant's active role in assisting with the procurement and distribution of the marijuana constitutes evidence from which a jury could reasonably conclude that Appellant agreed or had a tacit understanding to traffic in marijuana for the mutual benefit of himself and his co-defendants. Accordingly, the trial judge's denial of Appellant's motion for a directed verdict is

**AFFIRMED.**

CURETON and GOOLSBY, JJ., concur.