562 S.E.2d 320

**The STATE, Respondent,**

v.

**Richard CONDREY, Appellant.**

**No. 3471.**

Court of Appeals of South Carolina.

Heard March 7, 2002.

Decided April 1, 2002.

Assistant Appellate Defender Katherine Carruth Link, of the South Carolina Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Robert E. Bogan, and Senior Assistant Attorney General Norman Mark Rapoport, all of Columbia; and Solicitor Thomas E. Pope, of York, for respondent.

ANDERSON, J.:

Richard Condrey was charged with two counts of criminal conspiracy, two counts of grand larceny, and one count of obtaining goods by false pretenses. He was convicted of one count of grand larceny and one count of criminal conspiracy. Condrey was acquitted of the remaining charges. He was sentenced to ten years for grand larceny and five years for criminal conspiracy, with both sentences suspended upon the service of three years, plus five years probation. Condrey appeals. We affirm.

## FACTS/PROCEDURAL BACKGROUND

In the summer of 1999, Jay Manning, director of operations for Shoe Show based in Concord, North Carolina, received a report that some of his company's shoes were being sold at a flea market in South Carolina. He determined the shoes from the flea market came from a Shoe Show truck driven by Steve West. Manning concluded West was stealing shoes from the

company and pinpointed a truck stop on Highway 901 in York County where West frequently stopped.

Manning hired an investigator, John Walters, to document West's actions. On the afternoon of July 8, 1999, Walters was at the truck stop and observed West arrive in his tractor trailer truck around 5:00 p.m. A short time after West parked his vehicle, Condrey drove up in a truck and parked behind West's truck. West and Condrey talked. Thereafter, the two men unloaded several cases of shoes from the tractor trailer onto Condrey's truck. Walters videotaped the transfer of the shoes. West and Condrey had another conversation after the shoes were loaded onto Condrey's truck. The men drove off in their respective vehicles and Walters followed Condrey. Walters opined that Condrey realized he was being followed and attempted to evade Walters.

Manning later confronted West, who initially denied stealing the shoes, but eventually confessed. According to Detective Jerry Hoffman of the York County Sheriff's Department, West identified Condrey as his "partner." West was charged with breach of trust. He pled guilty and received probation. He agreed to testify against Condrey.

West testified he had known Condrey for "most of [his] life." Condrey knew West delivered shoes. West declared Condrey asked, "Big boy, can you get us some shoes?" West agreed to get the shoes for Condrey because he needed money to buy medicine for his mother. Condrey offered to pay West $50 a case. Each case contained ten to twelve boxes of shoes. When West had "leftovers" from deliveries, he put them aside and saved them. The two men had arranged that when West had the shoes and was in the area, he would page Condrey, who would meet West at the truck stop, the prearranged location.

In June 1999, West sold Condrey five cases of shoes at the agreed price of $50 per case. Condrey informed West he was going to sell the shoes at a flea market. On July 8, West met Condrey and sold him nine cases of shoes. On this occasion, West wanted more money. Condrey agreed to pay $100 per case. West stated he told Condrey that he was stealing the shoes from the company.

Tammy Keen, a vendor at the same flea market as Condrey, saw Condrey selling the shoes at the flea market in June. Condrey told her he was buying the shoes off an "eighteen wheeler" and that the shoes were "like store returns." Keen bought a total of 229 boxes of shoes from Condrey during two separate occasions at $20 a pair.

## ISSUES

I. Did the trial court err in refusing to grant a directed verdict as to the charges of grand larceny and criminal conspiracy?

II. Did the trial court err in charging the "hand of one is the hand of all" doctrine?

III. Did the trial court err in not allowing defense counsel, in closing argument, to discuss the offense of receiving stolen goods or to argue that the State had charged Condrey with the wrong offense?

## LAW/ANALYSIS

### I. Directed Verdict

At the close of the State's case, Condrey moved for a directed verdict on all the offenses charged. He argued the State failed to produce any evidence he was a participant in the crimes of grand larceny and criminal conspiracy. The trial judge denied the motions.

When ruling on a motion for a directed verdict, the trial court is concerned with the existence or non-existence of evidence, not its weight. *State v. Williams*, 303 S.C. 274, 400 S.E.2d 131 (1991); *State v. Green*, 327 S.C. 581, 491 S.E.2d 263 (Ct.App.1997). On appeal from the denial of a directed verdict, an appellate court must view the evidence in the light most favorable to the State. *State v. Rowell*, 326 S.C. 313, 487 S.E.2d 185 (1997); *State v. Schrock*, 283 S.C. 129, 322 S.E.2d 450 (1984). If there is any direct evidence or any substantial circumstantial evidence reasonably tending to prove the guilt of the accused, this Court must find the case was properly submitted to the jury. *State v. Kelsey*, 331 S.C. 50, 502 S.E.2d 63 (1998); *State v. Huggins*, 325 S.C. 103, 481 S.E.2d 114 (1997).

## A. Larceny

Condrey was indicted for grand larceny. Larceny of goods, chattels, instruments, or other personalty valued in excess of one thousand dollars is grand larceny. S.C.Code Ann. § 16–13–30(B) (Supp.2001). Larceny is the felonious taking and carrying away of the goods of another against the owner's will or without his consent. *State v. Keith,* 283 S.C. 597, 325 S.E.2d 325 (1985); *State v. Brown,* 274 S.C. 48, 260 S.E.2d 719 (1979). To make out the offense of larceny, there must be a felonious purpose. *State v. Williams,* 237 S.C. 252, 116 S.E.2d 858 (1960). The taking must be done *animo furandi*—with a view of depriving the true owner of his property and converting it to the use of the offender. *Id.*

Viewing the evidence in the light most favorable to the State, there was evidence that Condrey planned with West to take the shoes. Condrey asked West if he could get some shoes and he met West at the truck stop to pick up the shoes. He took the shoes and converted them to his own use by selling them to Keen. West testified that Condrey was aware the shoes were. stolen. We find the case was properly submitted to the jury, as the evidence reasonably tended to prove Condrey's guilt as to the charge of grand larceny.

## B. Criminal Conspiracy

A "conspiracy" is statutorily defined as "a combination between two or more persons for the purpose of accomplishing an unlawful object or a lawful object by unlawful means." S.C.Code Ann. § 16–17–410 (Supp.2001). In *State v. Fleming,* 243 S.C. 265, 133 S.E.2d 800 (1963), the Supreme Court stated the law of conspiracy with exactitude:

The foregoing statute [the predecessor to § 16–17–410] is declaratory of the common law definition of conspiracy. *State v. Jacobs,* 238 S.C. 234, 119 S.E.2d 735 [1961], and authorities cited therein. It need not be shown that either the object or the means agreed upon is an indictable offense in order to establish a criminal conspiracy. It is sufficient if the one or the other is unlawful. *State v. Davis,* 88 S.C. 229, 70 S.E. 811 [1911]. Nor need a formal or express agreement be established. A tacit, mutual understanding, resulting in the willful and intentional adoption of a common design by two or more persons is sufficient, provided the

common purpose is to do an unlawful act either as a means or an end. 15 C.J.S. *Conspiracy* § 40. Although the offense of conspiracy may be complete without proof of overt acts, such "acts may nevertheless be shown, since from them an inference may be drawn as to the existence and object of the conspiracy. It sometimes happens that the conspiracy can be proved in no other way." *State v. Hightower,* 221 S.C. 91, 69 S.E.2d 363 [1952]. "To establish sufficiently the existence of the conspiracy, proof of an express agreement is not necessary, and direct evidence is not essential, but the conspiracy may be sufficiently shown by circumstantial evidence and the conduct of the parties. The circumstantial evidence and the conduct of the parties may consist of concert of action." 15 C.J.S. *Conspiracy* § 93a.

*Id.* at 274, 133 S.E.2d at 805.

An excellent academic review of the law of conspiracy is articulated in *State v. Amerson,* 311 S.C. 316, 428 S.E.2d 871 (1993):

Generally, the agreement, which is the essence of the conspiracy, is proven by various overt acts committed in furtherance of the conspiracy. Therefore, a single conspiracy may be established by completely different aggregations of proof so that there appears to be several conspiracies. *United States v. Ragins,* 840 F.2d 1184 (4th Cir.1988). Accordingly, a multi-pronged flexible "totality of the circumstances" test is applied to determine whether there were two conspiracies or merely one. *Id.* The factors considered are: (1) the time periods covered by the alleged conspiracies; (2) the places where the conspiracies are alleged to have occurred; (3) the persons charged as conspirators; (4) the overt acts alleged to have been committed in furtherance of the conspiracies, or any other descriptions of the offenses charged which indicate the nature and scope of the activities being prosecuted; and (5) the substantive statutes alleged to have been violated. *Id.* This test was adopted by this Court in [*State v.*] *Dasher,* [278 S.C. 454, 298 S.E.2d 215 (1982)].

*Id.* at 319–20, 428 S.E.2d at 873.

It is axiomatic that a conspiracy may be proved by direct or circumstantial evidence or by circumstantial evidence

alone. *State v. Childs*, 299 S.C. 471, 385 S.E.2d 839 (1989). As *State v. Miller*, 223 S.C. 128, 74 S.E.2d 582 (1953), instructs: "Often proof of conspiracy is necessarily by circumstantial evidence alone." *Id.* at 133, 74 S.E.2d at 585 (citations omitted). Substantive crimes committed in furtherance of the conspiracy constitute circumstantial evidence of the existence of the conspiracy, its object, and scope. *State v. Wilson*, 315 S.C. 289, 433 S.E.2d 864 (1993). Under South Carolina law, no overt acts need be shown to establish a conspiracy. The crime consists of the agreement or mutual understanding. *Id.*

Once a conspiracy has been established, evidence establishing beyond a reasonable doubt the connection of a defendant to the conspiracy, even though the connection is slight, is sufficient to convict him with knowing participation in the conspiracy. *State v. Sullivan*, 277 S.C. 35, 282 S.E.2d 838 (1981). Further, "the acts and declarations of any conspirator made during the conspiracy and in furtherance thereof are deemed to be the acts and declarations of every other conspirator and are admissible against all." *Id.* at 42, 282 S.E.2d at 842 (citation omitted).

When viewed in the light most favorable to the State, the evidence reasonably demonstrates Condrey formed an agreement with West to steal shoes from the tractor trailer that West was driving for Shoe Show. Condrey approached West and asked if West could "get" some shoes. He agreed to pay West's asking price for the shoes and prearranged a meeting place. West would page Condrey to meet him and pick up the shoes. There is evidence Condrey knew West was stealing the shoes. West declared the two men were "partners." The surveillance tape clearly shows West and Condrey unloading the cases of shoes and putting them onto Condrey's truck. The scheme would not have worked if the two men had not been working together with an agreement, as the completion of the project could not have been accomplished if both men had not been participating together. Based on this evidence, the trial judge properly denied Condrey's motion for directed verdict as to the charge of criminal conspiracy.

## II. Charge as to "Hand of One is the Hand of All"

Condrey asserts the State's evidence did not support the court's charge concerning the accomplice liability theory of

the "hand of one is the hand of all." This assertion is meritless.

Under the "hand of one is the hand of all" theory, one who joins with another to accomplish an illegal purpose is liable criminally for everything done by his confederate incidental to the execution of the common design and purpose. *State v. Langley,* 334 S.C. 643, 515 S.E.2d 98 (1999).

"It is well-settled that a defendant may be convicted on a theory of accomplice liability pursuant to an indictment charging him only with the principal offense." *State v. Dickman,* 341 S.C. 293, 295, 534 S.E.2d 268, 269 (2000) (citations omitted); *see also State v. Leonard,* 292 S.C. 133, 355 S.E.2d 270 (1987).

Under an accomplice liability theory, "a person must personally commit the crime or be present at the scene of the crime and intentionally, or through a common design, aid, abet, or assist in the commission of that crime through some overt act." *State v. Langley,* 334 S.C. 643, 648–49, 515 S.E.2d 98, 101 (quoting *State v. Austin,* 299 S.C. 456, 459, 385 S.E.2d 830, 832 (1989)).

A formally expressed agreement is not necessary to establish the conspiracy. *State v. Oliver,* 275 S.C. 79, 267 S.E.2d 529 (1980); *State v. Fleming,* 243 S.C. 265, 133 S.E.2d 800 (1963); *State v. Bultron,* 318 S.C. 323, 457 S.E.2d 616 (Ct.App.1995). It may be shown by circumstantial evidence and the conduct of the parties. *Oliver,* 275 S.C. at 80, 267 S.E.2d at 530; *Fleming,* 243 S.C. at 274, 133 S.E.2d at 805; *Bultron,* 318 S.C. at 334, 457 S.E.2d at 622.

The law to be charged is determined from the evidence presented at trial. *State v. Harrison,* 343 S.C. 165, 539 S.E.2d 71 (Ct.App.2000), *cert. denied.* A trial court has a duty to give a requested instruction that correctly states the law applicable to the issues and which is supported by the evidence. *Id.* If any evidence exists to support a charge, it should be given. *State v. Burriss,* 334 S.C. 256, 513 S.E.2d 104 (1999).

The evidence at trial supported the charge regarding the "hand of one is the hand of all." The State presented direct

evidence showing the joint criminal activities of Condrey and West. West testified Condrey approached him about getting some shoes. The men then planned several meetings where West unloaded the shoes off of the Shoe Show truck onto Condrey's vehicle. Condrey paid West for the shoes. Thereafter, Condrey sold them at the flea market. The trial testimony constituted sufficient evidence whereby a jury could find Condrey was a willing accomplice in the crimes.

 Furthermore, the trial judge specifically charged the jury that "mere presence" did not constitute guilt and that "prior knowledge" that a crime was going to be committed, without more, was insufficient to constitute guilt. Mere presence at the scene of a crime is insufficient to convict one as a principal on the theory of aiding and abetting. *State v. Johnson*, 291 S.C. 127, 352 S.E.2d 480 (1987); *State v. Green*, 261 S.C. 366, 200 S.E.2d 74 (1973). With this charge, the judge eliminated any danger the jury could be misled by the "hand of one is the hand of all" charge.

In light of the evidence that West and Condrey were acting pursuant to a plan to steal the shoes, together with the trial judge's charge as a whole, a jury could reasonably have concluded not only that the two men were knowingly involved in the commission of the criminal act, but that there had been some planning and agreement among them pertaining to the act. Accordingly, the judge properly charged the jury concerning the "hand of one is the hand of all."

### III. Court's Limitation of Defense Counsel's Argument to the Jury

 During his closing argument, defense counsel attempted to argue the law of receiving stolen goods. The State objected. After a bench conference, defense counsel continued his closing argument stating: "Let me say first of all, Mr. Condrey is not charged with receiving stolen goods. We're not talking about that." Condrey contends the trial judge erred in not allowing him to discuss the offense of receiving stolen goods and argue that the State had charged the wrong offense.

 The trial judge did not err in limiting defense counsel's closing argument. A trial judge is allowed broad

discretion in dealing with the range and propriety of closing argument to the jury. *State v. Patterson,* 324 S.C. 5, 482 S.E.2d 760 (1997); *State v. Bell,* 302 S.C. 18, 393 S.E.2d 364 (1990); *State v. Durden,* 264 S.C. 86, 212 S.E.2d 587 (1975). Ordinarily, the judge's rulings on such matters will not be disturbed. *Patterson,* 324 S.C. at 17, 482 S.E.2d at 766; *Bell,* 302 S.C. at 33, 393 S.E.2d at 372; *Durden,* 264 S.C. at 91, 212 S.E.2d at 590.

Condrey wanted to argue the offense of receiving stolen goods as an exclusionary offense. In *State v. Good,* 315 S.C. 135, 432 S.E.2d 463 (1993), our Supreme Court cautioned that requiring a comparison charge when the facts do not warrant one "opens the door for every criminal defendant to create a quasi lesser-included offense for which they could not be convicted." *Id.* at 138, 432 S.E.2d at 465. The Court explained: "The real impact of the instruction is that it permits the jury to reach a compromise verdict on a non-charged offense." *Id.* Here, allowing defense counsel to argue on a comparison charge of receiving stolen goods where Condrey was charged with grand larceny would have improperly presented receiving stolen goods as a quasi lesser-included offense of larceny. Receiving stolen goods is not a lesser-included offense of larceny. *State v. McNeil,* 314 S.C. 473, 445 S.E.2d 461 (Ct.App.1994). Thus, the judge properly limited the scope of defense counsel's closing argument to matters which were relevant to the issues at trial. *See Hoeffner v. The Citadel,* 311 S.C. 361, 366, 429 S.E.2d 190, 193 (1993) ("Arguments by counsel which invite the jury to base its verdict on considerations not relevant to the merits of the case are improper.") (citation omitted).

## CONCLUSION

Based on the foregoing reasons, Condrey's conviction is **AFFIRMED.**

CURETON and GOOLSBY, JJ., concur.