387 S.C. 608 (2009)
693 S.E.2d 409
The STATE, Respondent,
v.
James E. SANDERS, Appellant.
No. 4527.
Court of Appeals of South Carolina.
Heard September 16, 2008.
Decided April 7, 2009.
Certiorari Dismissed May 26, 2010.
*611 Melissa Jane Reed Kimbrough, of Columbia, for Appellant.
Attorney General Henry D. McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, all of Columbia; and Solicitor Kevin Scott Brackett, of York, for Respondent.
THOMAS, J.
Sanders was convicted of the murder of Child Cope,[1] two counts of first degree criminal sexual conduct, and conspiracy to commit criminal sexual conduct. He was sentenced to life imprisonment, plus thirty years. Sanders appeals. We affirm the convictions for murder and two counts of criminal sexual conduct in the first degree, and reverse only as to the charge of conspiracy.

FACTS/PROCEDURAL HISTORY
On January 12, 2002, police responded to a burglary at a house on White Street in Rock Hill. After taking fingerprints, the officer was called to a house down the street where a man of a similar description was attacking Victim 4.[2] On January 12, 2002, at about midnight, Victim 4 was in her room watching a movie when she heard a knock at her door. When Victim 4 opened the door, Sanders pushed the door in and shoved her into the bathroom. The fight continued in the kitchen where Sanders kicked and pushed Victim 4. Sanders also held Victim 4 in a choke hold and tried to get on top of her several times. While Victim 4 was on the floor, Sanders ran into her room and grabbed her purse. As he was trying to leave, Victim 4 grabbed a pan from the stove and hit Sanders with it. He dropped the purse and Victim 4 grabbed *612 her mace. She tried to spray him, but missed. She then saw a small screwdriver on the floor and swung it at him, hitting him at least once in the shoulder.
Victim 4 had a blood stain on her shirt, which the police took as evidence. When officers searched for the suspect, they spotted Sanders crouched between two buildings around the corner from Victim 4's house. Sanders' clothes and hair matched the description both victims had given and he was bleeding. Police were able to match Sanders' prints with the fingerprints taken at the White Street house. Sanders submitted to a blood test on January 14, 2002.
In September 2002, SLED ran a test of bodily fluids found in the case of State v. Cope and found Sanders' DNA matched semen and saliva found on the body of Child. Sanders eventually was indicted on the charge of murdering Child.
On June 18, 2004, Sanders filed a motion to suppress the DNA evidence extracted from him in January 2002 because it was unlawfully obtained. Conceding the blood drawn in January 2002 was invalidly obtained, the State moved on August 3, 2004, to have more blood drawn from Sanders.[3] Sanders argued the second blood draw was fruit of the poisonous tree of the first draw. Judge Alford determined all the Snyder[4] factors were present: (1) probable cause existed to believe Sanders committed the crime of first degree burglary; (2) there was a clear indication that relevant material evidence would be found; (3) the method used to secure Sanders' blood sample was safe and reliable; and (4) the crime of first degree burglary is serious and the evidence to be collected from Sanders would be important to the investigation. On August 4, 2004, Judge Alford ordered Sanders to submit to a second blood test. Sanders' blood was drawn again on August 5, 2004. The trial court in this case denied Sanders' motion to suppress the DNA evidence based on Judge Alford's analysis under Snyder.
The jury convicted Sanders. This appeal follows.

*613 LAW/ANALYSIS

I. DNA Sample
Sanders argues the trial court erred in admitting the DNA evidence because the first blood draw was invalid and the evidence from the subsequent blood draw, after the August 2004 hearing in the Victim 4 case, should therefore have been suppressed. We disagree.
In State v. Brockman, 339 S.C. 57, 528 S.E.2d 661 (2000), our supreme court articulated the standard of review to apply to a trial court's determination that a search did not violate the Fourth Amendment. The Brockman court rejected the de novo standard set forth in Ornelas v. United States, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996), for reviewing determinations of reasonable suspicion and probable cause in the context of warrantless searches and seizures and reviewed the "trial court's ruling like any other factual finding." Brockman, 339 S.C. at 66, 528 S.E.2d at 666. Therefore, this court may reverse a trial court's ruling only upon a showing of clear error and must affirm if there is any evidence to support the ruling. See State v. Williams, 351 S.C. 591, 597, 571 S.E.2d 703, 706 (Ct.App.2002).
The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. Amend. IV. A court order that allows the government to procure evidence from a person's body constitutes a search and seizure under the Fourth Amendment. Schmerber v. California, 384 U.S. 757, 767-70, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). "[T]he Fourth Amendment's proper function is to constrain, not against all intrusions as such, but against intrusions which are not justified in the circumstances, or which are made in an improper manner." Id. at 768, 86 S.Ct. 1826. "In other words, the questions we must decide ... are whether the police were justified in requiring petitioner to submit to the blood test, and whether the means and procedures employed in taking his blood respected relevant Fourth Amendment standards of reasonableness." Id.
In In re Snyder, our supreme court set forth the considerations for a warrant or order compelling a bodily intrusion. 308 S.C. 192, 195, 417 S.E.2d 572, 574 (1992). The *614 elements to determine whether probable cause exists to permit the acquisition of such evidence are: (1) probable cause to believe the suspect has committed the crime; (2) a clear indication that relevant material evidence will be found; and (3) the method used to secure the evidence is safe and reliable. Id. The court also approved consideration of the seriousness of the crime and the importance of the evidence to the investigation. Id. The trial court, in issuing such an order, must "balance the necessity for acquiring involuntary nontestimonial identification evidence against constitutional safeguards prohibiting unreasonable bodily intrusions, searches, and seizures." Id.
We find no error in the trial court's review of probable cause under the Snyder factors in the Victim 4 case. Victim 4's shirt contained blood from the attack, Sanders was found nearby, his appearance matched Victim 4's description, and Sanders was injured when found.
Sanders also argues the trial court erred in permitting the DNA obtained in the Victim 4 case to be used in this case. We disagree.
A blood sample validly obtained in connection with one crime may be used in a subsequent unrelated case. See State v. McCord, 349 S.C. 477, 484, 562 S.E.2d 689, 693 (Ct.App. 2002) (finding no improper search or seizure where defendant's blood, voluntarily submitted in an unrelated case, is used in a subsequent case); see also Washington v. State, 653 So.2d 362, 364 (Fla.1994) ("[O]nce the samples were validly obtained, albeit in an unrelated case, the police were not restrained from using the samples as evidence in the murder case."); Bickley v. State, 227 Ga.App. 413, 489 S.E.2d 167, 169 (1997) (holding the DNA evidence should not be "suppressed on the basis that additional testing of defendant's blood ... required an independent warrant"); Patterson v. State, 744 N.E.2d 945, 947 (Ind.Ct.App.2001) ("[U]nder the facts of this case, society is not prepared to recognize as reasonable an individual's expectation of privacy in a blood sample lawfully obtained by police."); Wilson v. State, 132 Md.App. 510, 752 A.2d 1250, 1272 (2000) (holding Fourth Amendment claims are no longer applicable once a person's blood sample has been lawfully obtained).
*615 We find no error in using the results from the validly obtained blood evidence in the Victim 4 case as evidence in this case.

II. Conspiracy
Sanders argues the trial court erred in failing to direct a verdict on the conspiracy charges based on the lack of evidence supporting an agreement between Sanders and Cope. We agree.
"In reviewing the denial of a motion for a directed verdict, the evidence must be viewed in the light most favorable to the State, and if there is any direct evidence or any substantial circumstantial evidence reasonably tending to prove the guilt of the accused, an appellate court must find that the case was properly submitted to the jury." State v. Kelsey, 331 S.C. 50, 62, 502 S.E.2d 63, 69 (1998). "In ruling on a motion for a directed verdict, the trial court is concerned with the existence of evidence, not its weight." Id. In addressing the standard of review where the State relies exclusively on circumstantial evidence and a motion for directed verdict is made, our supreme court has stated:
[T]he circuit court is concerned with the existence or nonexistence of evidence, not with its weight. The circuit court should not refuse to grant the directed verdict motion when the evidence merely raises a suspicion that the accused is guilty. `Suspicion' implies a belief or opinion as to guilt based upon facts or circumstances which do not amount to proof. However, a trial judge is not required to find that the evidence infers guilt to the exclusion of any other reasonable hypothesis.
State v. Cherry, 361 S.C. 588, 594, 606 S.E.2d 475, 478 (2004) (emphasis in original) (internal citations omitted).
Criminal conspiracy is defined as "a combination between two or more persons for the purpose of accomplishing an unlawful object or a lawful object by unlawful means." S.C.Code Ann. § 16-17-410 (2003). "The essence of a conspiracy is the agreement." State v. Buckmon, 347 S.C. 316, 323, 555 S.E.2d 402, 405 (2001). "Often proof of conspiracy is necessarily by circumstantial evidence alone." State v. Miller, 223 S.C. 128, 133, 74 S.E.2d 582, 585 (1953). Nevertheless, *616 "the law calls for an objective, rather than subjective, test in determining the existence of a conspiracy." State v. Crocker, 366 S.C. 394, 406, 621 S.E.2d 890, 897 (Ct.App.2005). Moreover, in viewing the sufficiency of the evidence to support a charge of conspiracy, an appellate court "must exercise caution to ensure the proof is not obtained `by piling inference upon inference.'" State v. Gunn, 313 S.C. 124, 134, 437 S.E.2d 75, 81 (1993) (quoting Direct Sales Co. v. U.S., 319 U.S. 703, 711, 63 S.Ct. 1265, 87 L.Ed. 1674 (1943)).
"The gravamen of the offense of conspiracy is the agreement or combination." Gunn, 313 S.C. at 134, 437 S.E.2d at 80; see also State v. Condrey, 349 S.C. 184, 193, 562 S.E.2d 320, 324 (Ct.App.2002) (stating the crime of conspiracy "consists of the agreement or mutual understanding"). "Often proof of conspiracy is necessarily by circumstantial evidence alone." Miller, 223 S.C. at 133, 74 S.E.2d at 585. Recognition of this reality, however, does not compromise the standard that a trial court must use in deciding a directed verdict motion when the evidence against an accused is entirely circumstantial, namely, that the case must be submitted to the jury only "if there is substantial circumstantial evidence which reasonably tends to prove the guilt of the accused or form which his guilt may be fairly and logically deduced." State v. Arnold, 361 S.C. 386, 390, 605 S.E.2d 529, 531 (2004).
We agree with Sanders that the absence of actual proof of an agreement and of some connection between him and Cope warranted a directed verdict on the conspiracy charge. Here, there was no direct evidence of an association between Cope and Sanders. The State's evidence that there was a conspiracy was entirely circumstantial, consisting of: (1) forensic evidence that the bite mark where Sanders' DNA was found was inflicted within the same two-hour time frame as the injuries that Cope confessed to inflicting; (2) Sister's testimony that she and Child locked the doors before they went to bed and testimony that there was no evidence of forced entry; and (3) the fact that the house was full of debris and passage inside, particularly at night, would have been difficult. These factors, whether considered individually or collectively, raise at most a suspicion that Cope and Sanders intended to act together for their shared mutual benefit. Any inference that they made an agreement to accomplish a shared, single criminal *617 objective would be speculative at best. Therefore, because the State failed to prove the element of agreement for the crime of conspiracy, the trial court should have granted a directed verdict as to that charge.

CONCLUSION
We affirm the trial court's evidentiary rulings and the denial of Sanders' motion for severance. As a result, the sentences of life imprisonment for murder, plus thirty years for criminal sexual conduct, are also affirmed. We further hold, however, the trial court erred in declining to direct a verdict of acquittal for Sanders on the issue of conspiracy, and we reverse only as to that charge.
AFFIRMED IN PART, REVERSED IN PART.
PIEPER, J., concurs.
SHORT, J., concurs and dissents in a separate opinion.
SHORT, J. (dissenting in part):
I concur in part and respectfully dissent in part.
I concur with the majority that the trial court did not err in admitting the DNA evidence. I respectfully dissent, however, regarding the trial court's failure to direct a verdict on the conspiracy charge and would affirm the trial court on this issue.
"In reviewing the denial of a motion for a directed verdict, the evidence must be viewed in the light most favorable to the State, and if there is any direct evidence or any substantial circumstantial evidence reasonably tending to prove the guilt of the accused, an appellate court must find that the case was properly submitted to the jury." State v. Kelsey, 331 S.C. 50, 62, 502 S.E.2d 63, 69 (1998). "In ruling on a motion for a directed verdict, the trial court is concerned with the existence of evidence, not its weight." Id. In addressing the standard of review where the State relies exclusively on circumstantial evidence and a motion for directed verdict is made, our supreme court has stated:
[T]he circuit court is concerned with the existence or nonexistence of evidence, not with its weight. The circuit court *618 should not refuse to grant the directed verdict motion when the evidence merely raises a suspicion that the accused is guilty. `Suspicion' implies a belief or opinion as to guilt based upon facts or circumstances which do not amount to proof. However, a trial judge is not required to find that the evidence infers guilt to the exclusion of any other reasonable hypothesis.

State v. Cherry, 361 S.C. 588, 594, 606 S.E.2d 475, 478 (2004) (emphasis in original) (internal citations omitted).
Criminal conspiracy is defined as "a combination between two or more persons for the purpose of accomplishing an unlawful object or a lawful object by unlawful means." S.C.Code Ann. § 16-17-410 (2003). "The essence of a conspiracy is the agreement." State v. Buckmon, 347 S.C. 316, 323, 555 S.E.2d 402, 405 (2001). "A formal or express agreement need not be established." State v. Crawford, 362 S.C. 627, 637, 608 S.E.2d 886, 891 (Ct.App.2005). To prove conspiracy, it is not necessary to prove an overt act. State v. Crocker, 366 S.C. 394, 405, 621 S.E.2d 890, 896 (Ct.App.2005). "It is axiomatic that a conspiracy may be proved by direct or circumstantial evidence or by circumstantial evidence alone." State v. Horne, 324 S.C. 372, 381, 478 S.E.2d 289, 294 (Ct.App. 1996).
"Often proof of conspiracy is necessarily by circumstantial evidence alone." State v. Miller, 223 S.C. 128, 133, 74 S.E.2d 582, 585 (1953). "[I]n establishing the existence of a conspiracy or an individual's participation therein, it is permissible for the jury to consider circumstantial evidence because, by its very nature, a conspiracy is conceived and carried out clandestinely, and direct evidence of the crime is rarely available." 15A C.J.S. Conspiracy § 176 (2002). Although mere presence at the scene of a crime may be insufficient to support a conspiracy conviction, presence at the scene of the crime is relevant to prove conspiracy. Id. at §§ 176 & 187.
The State's theory was Cope served up Child to Sanders for their mutual perverse pleasures. Forensic evidence indicated the bite mark on Child where Sanders's DNA was found was inflicted within the same time period as the injuries Cope confessed to inflicting on Child. Additionally, no evidence existed of forced entry into the house by any of the windows *619 or doors. Sister testified she locked the back door that evening and Child locked the front door with a chain lock. Viewing the evidence in the light most favorable to the State, a connection and an overt act could be inferred from the circumstantial evidence that Cope allowed Sanders entry into the home wherein Sanders committed unlawful sexual acts upon Child. I find the temporal connection of the timing of the injuries and the lack of evidence of forced entry are circumstantial evidence that both Cope and Sanders were inside the house at the same time. A circumstantial connection was also made between Cope and Sanders by Cope's confessions and the DNA evidence implicating Sanders. Considering the totality of the evidence, I conclude substantial circumstantial evidence, rising above mere speculative inferences, exists to support the trial court's submission of the conspiracy charge to the jury. Accordingly, I would affirm the trial court's denial of Sanders's motion for a directed verdict on conspiracy.
NOTES
[1] See State v. Cope, Op. No. 4526 (S.C.Ct.App. filed April 2, 2009) (Shearouse Adv. Sh. No. 15 at 72, 72-74) (providing background facts of Child Cope's murder).
[2] See id. at 76-79 (providing background facts concerning Sanders' victims).
[3] The State conceded the Snyder factors were not considered in the warrant for the January 2002 blood test.
[4] In re: Snyder, 308 S.C. 192, 417 S.E.2d 572 (1992).