**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

David J. Benjamin, Petitioner,

v.

State of South Carolina, Respondent.

Appellate Case No. 2019-000528

———————————

Appeal From Calhoun County
Robin B. Stilwell, Circuit Court Judge

———————————

Unpublished Opinion No. 2023-UP-243
Heard May 9, 2023 – Filed June 21, 2023
Withdrawn, Substituted, and Refiled August 16, 2023

———————————

**AFFIRMED**

———————————

Tricia A. Blanchette, of Law Office of Tricia A. Blanchette, LLC, of Leesville, for Petitioner.

Attorney General Alan McCrory Wilson, Senior Assistant Deputy Attorney General William M. Blitch, Jr., and Assistant Attorney General Travis Cruise Mitchell, all of Columbia, for Respondent.

———————————

**PER CURIAM:** This court granted certiorari to review an order denying David Benjamin's application for post-conviction relief (PCR). Benjamin argues that his

trial counsel failed to effectively utilize the services of a lay witness, Antonio Gidron, and an expert witness, Kelly Fite, and that the PCR court accordingly erred in denying relief. We respectfully disagree and affirm.

Evidence supports the PCR court's decision that trial counsel did not ineffectively utilize Gidron. Even though Gidron was reluctant to be involved in the case, trial counsel successfully secured Gidron as a witness and was able to elicit favorable testimony from him—specifically, that Gidron saw Dominique Lawton get shot and did not see Benjamin with a gun. *Cf. Pauling v. State*, 331 S.C. 606, 610, 503 S.E.2d 468, 470-71 (1998) (finding counsel was deficient for failing to call a witness and elicit her testimony). We do not doubt Gidron's demeanor at trial was subpar. It seems evident trial counsel could have better prepared Gidron had Gidron been willing, and it is conceivable that Gidron would have presented himself with less hostility had he given trial counsel the opportunity to prepare him, but these were byproducts of Gidron's reluctance to cooperate. The PCR court credited trial counsel's testimony that Gidron evaded contact with him and even became physically combative on one occasion when his investigator served the subpoena. *See Lee v. State*, 396 S.C. 314, 319, 721 S.E.2d 442, 445 (Ct. App. 2011) (explaining this court defers to the PCR court's credibility findings). The fact that the State made multiple attempts to contact Gidron but was never successful substantiates trial counsel's claim. Considering how difficult it was to secure Gidron, trial counsel did well to manage two telephone conversations with him.

Next, we agree with the PCR court that even if trial counsel ineffectively utilized Fite, any deficiency did not prejudice Benjamin. Neither the expert who testified at the PCR hearing (Ralph Tressel) nor Fite was able to reconstruct the crime scene. And while Tressel presented compelling testimony about the firearms involved in the shooting, accomplice liability precludes a finding of prejudice. Tressel certainly discredited some testimony that was favorable to an accomplice liability theory (specifically, other witness testimony about who was shooting certain firearms and from where), but plenty of other testimony established that Benjamin, Joshua Haggood, and Kevin Frazier were looking to fight and had an agreement to be ready to fight. Multiple witnesses testified the three men went outside together and then reentered the club after Benjamin and Lawton had their initial altercation in the club. Haggood is the only witness who testified that the men left for the purpose of arming themselves, but a different witness testified Benjamin responded "I'm a killer" when he confronted Benjamin to ask him not to "follow around with" Lawton. There was witness testimony that Benjamin and Lawton were eyeballing each other throughout the night after the altercation and that everyone seemed to think something was going to happen. Police found gunshot residue in the area of the car where multiple

witnesses placed Benjamin during the shooting, and police found .45 shell casings in the same general area. And the key point of Tressel's testimony was that the fatal shot likely came from the gun fired by Benjamin's codefendant instead of the gun attributed to Benjamin. Thus, even given Tressel's testimony that Benjamin did not fire the fatal shot, this does not discredit the State's theory of murder. *See State v. Condrey*, 349 S.C. 184, 194, 562 S.E.2d 320, 324 (Ct. App. 2002) ("Under the 'hand of one is the hand of all' theory, one who joins with another to accomplish an illegal purpose is liable criminally for everything done by his confederate incidental to the execution of the common design and purpose."); *id.* at 194, 562 S.E.2d at 325 (explaining the State can use circumstantial evidence and the parties' conduct to establish accomplice liability). Therefore, the PCR court's order is

**AFFIRMED.**

**THOMAS, MCDONALD, and HEWITT, JJ., concur.**