614 S.E.2d 623

**The STATE, Petitioner,**

v.

**Dana DUDLEY, Respondent.**

**No. 25989.**

Supreme Court of South Carolina.

Heard Nov. 4, 2004.

Decided May 31, 2005.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Charles H. Richardson, and Senior Assistant Attorney General Harold M. Coombs, Jr., all of Columbia; and Druanne Dykes White, of Anderson, for Petitioner.

580

Assistant Appellate Defender Aileen P. Clare, of Columbia, for Respondent.

Justice PLEICONES.

The Court granted certiorari to consider an *en banc* decision of the Court of Appeals holding that extraterritorial jurisdiction is a component of subject matter jurisdiction such that the issue could be raised and considered for the first time on appeal. *State v. Dudley*, 354 S.C. 514, 581 S.E.2d 171 (Ct.App.2003). We affirm as modified.

## FACTS

Respondent, a resident of the Atlanta area, was a long time friend of Donald Stokes. Stokes and Earl Hale, residents of Roanoke, Virginia, were drug dealers. Stokes called respondent from Virginia and told her he and Hale were coming to Atlanta. Once there, the men contacted respondent and arranged to purchase cocaine from her. Stokes and Hale left Atlanta, driving back to Roanoke with the drugs.

Stokes and Hale were stopped on Interstate 85 in Anderson County, South Carolina. Hale, the driver, consented to a search of the vehicle, which led to the discovery of 249 grams of powder cocaine. Stokes and Hale were arrested. The men then entered "substantial assistance agreements" whereby they agreed to assist law enforcement agencies in Virginia and South Carolina in making drug cases. They identified respondent as the supplier of the 249 grams.

Stokes, monitored by law enforcement officers, made several phone calls to respondent in an attempt to set up the purchase of more cocaine.[1] While respondent agreed to expedite a deal, she declined to meet Stokes and Hale in South Carolina to consummate it. Eventually Stokes, in the company of several law enforcement officers, traveled to the Atlanta area. Once there, Stokes, at the direction of the officers, made excuses why he could not come further into the city as respondent requested. Finally, respondent came to Stokes who was waiting in a suburban Atlanta parking lot. When

---

1. The record does not indicate that respondent was aware that these calls originated in South Carolina.

respondent arrived, she was arrested by South Carolina authorities. She had no cocaine in her possession at the time of her arrest.

Respondent was indicted for trafficking cocaine by aiding and abetting Stokes and Hale in bringing the 249 grams of cocaine into South Carolina (trafficking charge). She was indicted for conspiring to traffic cocaine in Anderson County in connection with the second planned sale (conspiracy charge). Respondent was convicted of both trafficking and conspiracy and received concurrent twenty-five year sentences and was ordered to pay two six-thousand-dollar fines.

A panel of the Court of Appeals reversed respondent's conspiracy conviction, and by a vote of two to one, affirmed the trafficking conviction. Judge Connor dissented, and would have vacated both convictions finding South Carolina lacked extraterritorial jurisdiction.

A petition for rehearing *en banc* was granted to consider the validity of the trafficking conviction.[2] The *en banc* majority concluded that the exercise of extraterritorial jurisdiction was a component of subject matter jurisdiction that could be raised for the first time on appeal, and vacated respondent's conviction, finding no evidence she intended a detrimental effect in South Carolina. In dissent, Judge Anderson maintained respondent was raising a personal jurisdiction claim, which she had waived by failing to object at trial. He nevertheless held there was evidence of "intended effects" in South Carolina as to the trafficking charge. Judge Stilwell also dissented, and would have held that extraterritorial jurisdiction was not an element of subject matter jurisdiction, but was either a component of personal jurisdiction or some third type, and that in any case respondent had waived any right to complain by not objecting at trial. He, too, would have affirmed the trafficking conviction.

We granted certiorari to review the *en banc* decision.

## ISSUE

Is the issue of extraterritorial jurisdiction a component of subject matter jurisdiction?

---

**2.** The State has not challenged the reversal of the conspiracy conviction.

582

### ANALYSIS

██ The Court of Appeals *en banc* majority erred in holding that extraterritorial jurisdiction is a component of subject matter jurisdiction. Subject matter jurisdiction refers to the court's power "to hear and determine cases of the general class to which the proceedings belong. . . ." *State v. Gentry*, 363 S.C. 93, 610 S.E.2d 494 (2005). The circuit court has original jurisdiction in all criminal matters except those where an inferior court is given exclusive jurisdiction. S.C. Const. art. V, § 11 (Supp. 2004). Magistrates and municipal courts have exclusive jurisdiction over all state criminal charges where the punishment does not exceed a fine of one hundred dollars or imprisonment for thirty days. S.C.Code Ann. § 22–3–540 (1988); S.C.Code Ann. § 14–25–45 (Supp. 2004). Trafficking in cocaine, the crime at issue here, is punishable by a minimum sentence of three years and a $25,000 fine.[3] It therefore exceeds the inferior courts' exclusive jurisdictional limits. The circuit court has subject matter jurisdiction over the general class of trafficking charges. *Gentry, supra.*

██ Although territorial jurisdiction is not a component of subject matter jurisdiction, we hold that it is a fundamental issue that may be raised by a party or by a court at any point in the proceeding. *Compare, e.g., Gordon v. Commonwealth*, 38 Va.App. 818, 568 S.E.2d 452 (Ct.App.2002) (claim that crime did not occur in state not waived by failure to timely raise it). The exercise of extraterritorial jurisdiction implicates the state's sovereignty,[4] a question so elemental that we hold it cannot be waived by conduct or by consent.

 While a defendant need not be physically present in the State in order to commit a criminal offense here, the State's extraterritorial jurisdiction extends only to those who have performed acts "intended to produce and producing detrimental effects within" our boundaries. *Strassheim v. Daily*, 221 U.S. 280, 31 S.Ct. 558, 55 L.Ed. 735 (1911); *see also State v. Morrow*, 40 S.C. 221, 18 S.E. 853 (1893). We agree

---

3. S.C.Code Ann. § 44–53–370(e)(2) (2002).

4. *See* S.C.Code Ann. § 1–1–10 (Supp.2003) ("The sovereignty and jurisdiction of this State extends to all places within its bounds. . . .").

with the Court of Appeals majority that there is no evidence that respondent intended a detrimental effect in South Carolina when she sold the cocaine to Stokes and Hale. Accordingly, the decision of the Court of Appeals is

AFFIRMED AS MODIFIED.

MOORE, A.C.J., WALLER, BURNETT, JJ., and Acting Justice EDWARD B. COTTINGHAM, concur.