621 S.E.2d 890

**The STATE, Respondent,**

v.

**Phillip H. CROCKER, III, Appellant.**

**No. 4038.**

Court of Appeals of South Carolina.

Heard Sept. 13, 2005.

Decided Oct. 31, 2005.

John Dennis Delgado, and Kathrine Haggard Hudgins, both of Columbia, for appellant.

Attorney General Henry D. McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Senior Assistant Attorney General William Edgar Salter, III, Office of the Attorney General; and Solicitor W. Barney Giese, all of Columbia, for respondent.

KITTREDGE, J.:

Phillip H. Crocker, III, was convicted and sentenced in Richland County for murder and trafficking in marijuana. Crocker appeals only from the drug conviction and sentence, contending the State neither alleged nor presented evidence that he committed a drug trafficking offense in Richland County. This contention is embraced in three assignments of error: (1) the denial of his motions to quash the marijuana trafficking indictment and for a directed verdict based on lack of jurisdiction and improper venue; (2) the denial of his

motion for a directed verdict based on lack of evidence; and (3) the admission of certain evidence.[1] We affirm.

## FACTS

Nathaniel Casey, Jr. (known as "Junior") was murdered when he and his wife, Consuelo, met Crocker in a parking lot in Richland County for the purpose of buying a large amount of marijuana. The relevant facts leading up to this ultimately violent meeting between the Caseys and Crocker are as follows.

Consuelo operated a barbershop in Dillon, South Carolina, and Junior sold marijuana for a living. The Caseys wanted to build a home, and they chose Junior's marijuana business as the way to raise the necessary funds.

On November 19, 2001, Consuelo told an acquaintance, Willie Jennings, about the plan. She inquired if Jennings could assist the couple with a large purchase in the $40,000 range, or about 50 pounds of marijuana. Jennings said he could put them in touch with a dealer.

The following day, November 20, Jennings returned to the barbershop with the appellant Crocker, who lived in Charlotte, North Carolina. At this meeting Crocker agreed to sell Junior approximately 50 pounds of marijuana. They planned to meet in Columbia, South Carolina, the following day. The exact location would be determined on the way there. Cell phone numbers were exchanged. The meeting concluded; and it was agreed Jennings would be paid $500 for helping broker the deal between Junior and Crocker.

---

1. In challenging the admission of evidence seized from his Charlotte, North Carolina home, the last sentence of Crocker's brief reads: "The appellant's conviction for trafficking in marijuana should be vacated and the conviction for murder should be reversed." This is the only challenge to the murder conviction. Crocker's "Statement of Issues on Appeal" contains no reference or challenge to the murder conviction. *See* Rule 208(b)(1)(B), SCACR ("Ordinarily, no point will be considered which is not set forth in the statement of the issues on appeal."). Moreover, conclusory statements unaccompanied by argument and citation to authority are insufficient to preserve an issue for appellate review. *Fields v. Melrose Ltd. P'ship*, 312 S.C. 102, 106, 439 S.E.2d 283, 285 (Ct.App.1993) (holding that failure to provide argument or supporting authority for an issue renders it abandoned); Jean Hoefer Toal et al., *Appellate Practice in South Carolina* 75–76 (2d. ed. 2002).

The next day, November 21, Consuelo and Junior left Dillon in their Chevrolet Tahoe between 1:00 and 2:00 in the afternoon and headed for Columbia with $40,000 in cash. Several phone conversations were made via cell phone while en route. Crocker first called the Caseys from near his home in Charlotte. Crocker called the Caseys again around 3:00 p.m., this time from the Blythewood area of Columbia in Richland County. Several more calls were made back and forth in the Columbia area. The parties finally agreed to meet in the Lowe's parking lot, near I–20 on Two Notch Road in Columbia.

When the Caseys arrived in the Lowe's parking lot, Crocker pulled in behind them, driving a dark gray station wagon with wood grain paneling. Crocker backed up his station wagon to the Casey vehicle. Crocker got out and asked Junior to help him transfer the drugs. Junior exited to help Crocker with the lifting of the marijuana, while Consuelo remained in the front seat of the vehicle.

Crocker and Junior transferred a large, blue, Tupperware-like container into the back of the Tahoe. Consuelo noticed a conversation between Junior and Crocker as the purported drugs were placed in the Casey vehicle, but she was unable to hear what was said. Crocker then pulled out a gun and shot Junior, killing him. Crocker fled the scene in his station wagon. Law enforcement responded to the crime scene.

No marijuana was found in the large container, only blankets and a sack of concrete and cinder blocks. On the blue container police found seven fingerprints belonging to Crocker's father, Phillip H. Crocker, II. Also found in the Casey vehicle were two handguns and the $40,000 in cash.

Both Consuelo and Jennings eventually cooperated with police. A search warrant was executed at Crocker's home in Charlotte, where he resided with his father. A number of items were found at the house, including: (1) a half pound bag of marijuana in block form locked in a shed in the back yard; (2) a book on laws pertaining to marijuana; (3) storage containers identical to that found in the Casey's vehicle, all of which contained the same type of blankets; (4) paperwork relating to a 1988 Pontiac 6000 Station Wagon, which had been sold to a third party after Junior's murder; and (5) various

weapons and ammunition. Five or six cell phones—which were connected to accounts in different names—were also found.

Prior to trial, Crocker moved to quash the indictment for lack of subject matter jurisdiction, personal jurisdiction, and improper venue. The trial court declined to grant the motions, noting that at the pretrial stage, the record was "factually deprived." The motions were renewed at the directed verdict stage and denied. Crocker also moved to suppress the items seized from his home. The trial court denied the suppression motion with respect to the marijuana and book on marijuana laws found at his residence, among other items.

The jury convicted Crocker of both charges. Crocker was sentenced to thirty years for the murder charge and five years, consecutively, on the trafficking in marijuana charge. Crocker appeals only from the drug-related conviction and sentence.

## LAW/ANALYSIS

Crocker's challenge to his trafficking in marijuana conviction is threefold: (1) since the "State failed to allege any facts to support that the defendant committed a trafficking offense in Richland County," the trial court erred in denying his motions to quash and for directed verdict, on jurisdictional and venue grounds; (2) since the "State failed to present evidence that the [trafficking] offense was committed in Richland County," the trial court erred in denying his directed verdict motion based on jurisdictional and venue grounds, as well as lack of evidence; and (3) the trial court erred in the admission of certain items seized from his home. We address these issues separately, although we recognize the relationship among them.

## I. JURISDICTION AND VENUE

### A. Subject matter and personal jurisdiction

"Subject matter jurisdiction is the power of a court to hear and determine cases of the general class to which the proceedings in question belong." *Pierce v. State*, 338 S.C. 139, 150, 526 S.E.2d 222, 227 (2000). "The circuit court has

original jurisdiction in all criminal matters except those where an inferior court is given exclusive jurisdiction." *State v. Dudley,* 364 S.C. 578, 582, 614 S.E.2d 623, 625 (2005); S.C. Const. art. V, § 11 (Supp. 2004). "Circuit courts obviously have subject matter jurisdiction to try criminal matters." *State v. Gentry,* 363 S.C. 93, 101, 610 S.E.2d 494, 499 (2005). Circuit courts have subject matter jurisdiction over drug trafficking charges. *Dudley,* 364 S.C. at 582, 614 S.E.2d at 625. Generally, the requirements of subject matter jurisdiction are satisfied when appropriate charges are filed in a competent court. *State v. Dudley,* 354 S.C. 514, 523, 581 S.E.2d 171, 176 (Ct.App.2003), *aff'd as modified,* 364 S.C. 578, 614 S.E.2d 623.

■■ "Jurisdiction of the offense charged and of the person of the accused is indispensable to a valid conviction." *Dudley,* 354 S.C. at 522, 581 S.E.2d at 175 (quoting *State v. Langford,* 223 S.C. 20, 26, 73 S.E.2d 854, 857 (1953)). Two distinct types of jurisdiction exist: (1) jurisdiction of the subject or subject matter, and (2) jurisdiction of the person. *Dudley,* 354 S.C. at 522, 581 S.E.2d at 175.

We summarily dispose of Crocker's subject matter jurisdiction claim that the State failed to allege any facts that he committed a drug trafficking offense in Richland County, and affirm pursuant to Rule 220(b)(2), SCACR, and the above-cited authorities.

■ Turning to the second prong of Crocker's jurisdictional challenge, it is generally recognized that jurisdiction over the person in a criminal case lies in the state or county where the crime was committed. 4 Wayne R. LaFave et al., *Criminal Procedure* § 16.4(c) (2d ed. 1999). The indictment alleged, in pertinent part, that Crocker "did in Richland County on or about November 21, 2001[,] knowingly . . . conspire to sell . . . more than 10 lbs. of Marijuana." During pretrial arguments, the State disputed Crocker's factual recitation, and the trial court denied the motion preliminarily, noting the record was "factually deprived." Clearly, the State alleged a trafficking offense in Richland County, and resolution of Crocker's motion required an evidentiary record. We reject as meritless Crocker's assertion that the trial court erred in denying his directed verdict motion based on a lack of jurisdiction over his person.

The real thrust of Crocker's jurisdictional arguments is that the trial court erred in not granting his directed verdict motion, because the State failed to *prove* any act in furtherance of a conspiracy to traffic in marijuana took place in Richland County.

As we view the evidence in a light most favorable to the State, as we must, we reject the premise of Crocker's assertion that the conspiracy had no connection to Richland County. *State v. Kelsey*, 331 S.C. 50, 62, 502 S.E.2d 63, 69 (1998) (holding that on a directed verdict motion in a criminal case, the evidence must be viewed in the light most favorable to the State). To accept Crocker's factual recitation would have required the trial court—and now us—to abandon the mandated lens through which evidence is viewed in a directed verdict motion in a criminal case. When properly viewed, the record is replete with evidence that many of the actions undertaken by the Caseys and Crocker in furtherance of the alleged conspiracy occurred in Richland County.

Were we to indulge in the fiction that the conspiracy had no nexus to Richland County, we would nevertheless be constrained to reject Crocker's jurisdictional arguments. As relates to a defendant's entitlement to a directed verdict on such grounds, our supreme court has held that "[a] criminal defendant is entitled to a directed verdict when the State fails to present evidence that the offense was committed in the county alleged in the indictment." *State v. Williams*, 321 S.C. 327, 333, 468 S.E.2d 626, 630 (1996) (quoting *State v. Evans*, 307 S.C. 477, 480, 415 S.E.2d 816, 818 (1992), *overruled in part by State v. Gentry*, 363 S.C. 93, 610 S.E.2d 494 (2005)). But the legal basis for this proposition is venue, not jurisdiction, for the court in *Evans* observed that "[a]lthough an accused has a right to be tried in the county in which the offense is alleged to have been committed, we hold this right is not jurisdictional." *Evans*, 307 S.C. at 480, 415 S.E.2d at 818. *Evans* recognized the merging of jurisdictional and venue principles in prior cases, but "overruled" those cases "[t]o the extent ... the cases ... indicate[d] that venue is jurisdictional...." *Id.* The right to be tried in the county in which the offense is alleged to have been committed, then, is a matter of venue.

## B. Venue

▆▆▆▆ Because the trial court had jurisdiction over Crocker—subject matter and personal—the issue is whether venue was properly laid in Richland County. As noted, venue principles entitle a criminal defendant "to a directed verdict when the State fails to present evidence that the offense was committed in the county alleged in the indictment." *State v. Evans,* 307 S.C. 477, 480, 415 S.E.2d 816, 818 (1992), *overruled in part on other grounds by State v. Gentry,* 363 S.C. 93, 610 S.E.2d 494 (2005). The standard for establishing venue is not a stringent one, for "venue, like jurisdiction, in a criminal case need not be affirmatively proved, and circumstantial evidence of venue, though slight, is sufficient. . . ." *State v. Williams,* 321 S.C. 327, 334, 468 S.E.2d 626, 630 (1996). "[W]here some acts material to the offense . . . occur in one county, and some in another, venue is proper in either county." *Id.*

Crocker was charged with trafficking in marijuana in violation of section 44–53–370(e)(1)(a)(1) of the South Carolina Code (Supp.2000). One manner in which the State may establish the substantive offense of trafficking in marijuana under this section is to prove that the defendant "conspire[d] to sell" ten or more pounds of marijuana. Section 44–53–370(e)(1). Thus, a defendant may be charged with trafficking under a theory of conspiracy.

▆▆▆▆ A conspiracy is defined as the "combination between two or more persons for the purpose of accomplishing an unlawful object or lawful object by unlawful means." S.C.Code Ann. § 16–17–410 (2003). "The gravamen of conspiracy is an agreement or combination." *State v. Dudley,* 354 S.C. 514, 532, 581 S.E.2d 171, 181 (Ct.App.2003), *aff'd as modified,* 364 S.C. 578, 614 S.E.2d 623 (2005). An overt act in furtherance of the conspiracy is not necessary to prove the crime. *Id.*

▆▆▆▆ "To establish the existence of a conspiracy, proof of an express agreement is not necessary, and direct evidence is not essential, but the conspiracy may be sufficiently shown by circumstantial evidence and the conduct of the parties." *Id.* (quoting *State v. Buckmon,* 347 S.C. 316, 323, 555 S.E.2d 402, 405 (2001)). Evidence of direct contact or an explicit agreement between the defendants need not be shown. *State*

*v. Barroso,* 320 S.C. 1, 8, 462 S.E.2d 862, 868 (Ct.App.1995), *rev'd on other grounds,* 328 S.C. 268, 493 S.E.2d 854 (1997). "It is sufficient to show that each defendant knew or had reason to know of the scope of the conspiracy and that each defendant had reason to believe his own benefits were dependent upon the success of the entire venture." *Id.* at 8–9, 462 S.E.2d at 868.

 The State presented evidence that the agreement between Crocker and the Caseys was formed in Dillon County. Crocker argues that because he challenges the existence of the agreement itself, acts in furtherance of the purported conspiracy should not be considered in laying venue. Crocker misapprehends the interplay between the law of conspiracy and venue. "Venue of a prosecution for conspiracy may be laid in either the county in which the agreement was entered, or in any county in which an overt act was done by any of the conspirators in furtherance of their common design." *State v. Wells,* 249 S.C. 249, 259, 153 S.E.2d 904, 909 (1967); *see also State v. Hightower,* 221 S.C. 91, 97–98, 69 S.E.2d 363, 366 (1952) (noting that "[t]he rule is generally recognized that if the overt act is committed within the court's jurisdiction, the place of the conspiracy is immaterial"). The jury, of course, could not have returned a guilty verdict on the conspiracy indictment without finding the formation of the marijuana trafficking agreement in Dillon County on November 20.

The November 21 meeting in Richland County occurred as a result of the agreement—to traffic in marijuana—made the previous day in Dillon County. Moreover, because numerous phone calls were made in Richland County between Crocker and Junior to determine the location for the transfer of the marijuana, and the meeting occurred in Richland County, ample evidence exists to clear the hurdle necessary to support venue in Richland County. *See Williams,* 321 S.C. at 333–34, 468 S.E.2d at 630 (holding that venue need not be affirmatively proved). Venue was proper in Richland County.

## II. CONSPIRACY TO TRAFFIC IN MARIJUANA

 Crocker next claims that he was entitled to a directed verdict because the State failed to prove the existence of a conspiracy to traffic in marijuana. Crocker testified that he

had no knowledge of and no involvement in the alleged agreement to traffic marijuana. Specifically, Crocker argues that because no marijuana was actually delivered to the Caseys in Richland County, the only inference supported by the evidence is that the perpetrator's intent was to rob the Caseys, not sell them marijuana. Therefore, he asserts no "meeting of the minds" existed to form the agreement necessary for a conspiracy charge. Of Crocker's various assignments of error, this one is the most fundamentally at odds with our standard of review from the denial of a directed verdict motion, and we reject it.

Crocker asserts that no meeting of the minds can be shown because the perpetrator only pretended to set up a drug sale, but intended from the beginning to rob the Caseys. There are, to be sure, situations where a lack of an agreement is manifest and the absence of a conspiracy may be determined as a matter of law. For example, "one cannot enter into a conspiracy with another who only feigns acquiescence in a crime; such as an informer or undercover agent." *State v. Holmes*, 277 S.C. 232, 233, 285 S.E.2d 353, 354 (1981). Crocker was neither an informer nor an undercover agent.

We additionally note that the law calls for an objective, rather than subjective, test in determining the existence of a conspiracy. There are sound policy reasons for using an objective standard. The drug culture is not known for attracting paragons of virtue, as courts are often presented with "drug deals gone bad," and in any event, a subjective test favorable to a defendant would run counter to the well-established standard of review for directed verdict motions. *State v. Kelsey*, 331 S.C. 50, 62, 502 S.E.2d 63, 69 (1998) (holding that on a directed verdict motion in a criminal case, the evidence must be viewed in the light most favorable to the State). For purposes of the trial court's resolution of the directed verdict motion, the evidence, when viewed objectively in the proper light, created a jury question as to the existence of the claimed drug conspiracy.[2]

---

2. Crocker's view that the purported drug deal was never intended—and the perpetrator secretly planned all along to rob the Caseys—is interesting in light of his testimony that he had no involvement in these crimes and was not present in Dillon on November 20, 2001. We decline to

We find direct evidence of the conspiracy in the testimony of Consuelo and Jennings. They understood that the agreement was for the Caseys to buy marijuana from Crocker, with Jennings to receive $500 for brokering the deal. We find circumstantial evidence in the cell phone calls in Richland County and the Caseys traveling to Richland County with $40,000. We find further circumstantial evidence in the items seized from Crocker's home. Because some evidence indicated the agreement was to traffic in marijuana, the question of the existence and nature of the agreement was properly a jury question.

We finally note that Crocker never testified that he planned to rob the Caseys at trial, but instead denied any connection with the transaction. Although the evidence indicates that at some point Crocker decided to withdraw from the marijuana conspiracy and to double-cross the Caseys, the crime of conspiracy was complete at the time the agreement was made. *See State v. Woods,* 189 S.C. 281, 287–88, 1 S.E.2d 190, 193–94 (1939) (stating that a conspirator seeking to withdraw must affirmatively communicate this intention to his associates); *see also State v. Gunn,* 313 S.C. 124, 135, 437 S.E.2d 75, 81 (1993) (holding that certain defendants withdrew by communicating their intent to do so to all co-conspirators). The record here is devoid of any suggestion that the perpetrator communicated an intent to withdraw from the conspiracy to Jennings or the Caseys. The presence of evidence establishing the existence of the drug conspiracy, coupled with the absence of evidence

---

accept Crocker's self-serving version of the perpetrator's undisclosed secret intentions, especially when on appeal from the denial of a directed verdict we are required to view the evidence in a light most favorable to the State. If Crocker's argument were adopted as framed, we would be creating a complete defense to a conspiracy charge that would entitle a defendant to a directed verdict on the mere self-serving contention that he (or the perpetrator) never intended to complete the drug transaction. A defendant like Crocker may advance such an argument, and a jury may accept the argument that there was no agreement in the first instance and acquit on the conspiracy charge. But Crocker asks us to rule in his favor on this issue as a matter of law. The presence of evidence in support of the indicted conspiracy offense precludes the direction of a verdict. And the law is contrary to Crocker's position, for a conspiracy may be proven by circumstantial evidence and conduct—objectively viewed—of the parties. *State v. Buckmon,* 347 S.C. 316, 323, 555 S.E.2d 402, 405 (2001). These are factual matters for a jury, not the court, to settle.

of withdrawal from the conspiracy, confirms the correctness of the trial court's decision to deny the directed verdict motion.

## III. MOTION TO SUPPRESS

Crocker's final argument is that the trial court erred in denying his motion to suppress the marijuana brick and book on marijuana laws found at his residence. We disagree.

"The admission or exclusion of evidence is a matter within the sound discretion of the trial court and absent clear abuse, will not be disturbed on appeal." *Gamble v. Int'l Paper Realty Corp. of S.C.*, 323 S.C. 367, 373, 474 S.E.2d 438, 441 (1996). To warrant reversal, an appellant must show both error and resulting prejudice. *Recco Tape & Label Co., Inc. v. Barfield*, 312 S.C. 214, 216, 439 S.E.2d 838, 840 (1994). "[E]vidence is relevant if it has a direct bearing upon and tends to establish or make more or less probable the matter in controversy." *State v. Staten*, 364 S.C. 7, 36–37, 610 S.E.2d 823, 838 (Ct.App.2005); Rule 401, SCRE. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." *State v. Shuler*, 353 S.C. 176, 184, 577 S.E.2d 438, 442 (2003); Rule 403, SCRE.

Here, the marijuana and the book on marijuana laws were relevant to establish the nature of the conspiracy. As discussed above, the marijuana was in brick form, indicating intended use in volume sale, not personal consumption. The book on marijuana laws also had some probative value as to the trafficking charge. We cannot say the danger of unfair prejudice from the evidence substantially outweighed its probative value. We thus find no abuse of discretion in the admission of this evidence.

## CONCLUSION

We reject Crocker's various challenges to the marijuana trafficking conviction and sentence. We hold that all of Crocker's motions attacking jurisdiction and venue were properly denied. We further hold that sufficient evidence existed that Crocker entered into a conspiracy to sell marijuana to survive his motion for a directed verdict on the trafficking

charge. Finally, the trial court acted within its discretion in the admission of the challenged evidence.

**AFFIRMED.**

HEARN, C.J., and STILWELL, J., concur.